JOURNAL ENTRY AND OPINION
Appellant, Maines Paper Food Service Midwest, Inc. is appealing the trial court's judgment in favor of appellee, Michael Eanes. For the following reasons, we affirm.
Appellee had an ownership interest in numerous Burger King restaurants. Two restaurants were owned by a corporation called Buckeye Foods, Inc. Appellee was the sole owner of Buckeye Foods, Inc. Appellee owned 75% of the shares of Buckeye Foods-Harvard, Inc. and Buckeye Foods-Kinsman, Inc. These corporations owned several Burger King restaurants. Appellant had a 51% interest in Buckeye Superior/Euclid, Inc., which also owned Burger King restaurants.
Appellant is in the business of selling paper products to fast food restaurants. Joseph Burkhart was a salesman for appellant. Burkhart had discussions with appellee concerning the purchase of paper products.
Appellee filled out a credit application in order to purchase supplies from appellant. The applicant was listed as Buckeye Foods, Inc. The line underneath the applicant's name asked for delivery address. Appellant wrote see attached, and attached a list of ten Burger King restaurants. Buckeye Foods, Inc. did not own all ten restaurants. The credit application states that the applicant certifies that all information is truthful, accurate and complete. Appellee signed the application on behalf of Buckeye Foods, Inc.
The application contained a personal guarantee which states, In consideration of extension credit by Maines Paper Food Service Midwest, Inc. to the above named customer . . . the undersigned unconditionally guarantees prompt payment . . . if not paid at maturity by the customer. Appellee signed the personal guarantee.
The ten Burger King restaurants purchased items from appellant. The restaurants were billed individually for their purchases. The restaurants paid with checks bearing the name of the corporation that owned that particular restaurant.
Buckeye Foods, Inc. filed for bankruptcy. A judgment was rendered against appellee personally for the purchases made by the restaurants owned by Buckeye Foods, Inc., in the amount of $67,513.94.
Appellant filed this suit, claiming that appellee also personally guaranteed the purchases made by the stores owned by the other corporations (Buckeye-Harvard, Buckeye-Kinsman and Buckeye-Euclid/Superior). These purchases totaled $101,818.67.
Joseph Burkhart testified that appellant never told him that the restaurants were owned by separate corporations. Burkhart believed that Buckeye Foods, Inc. owned all ten restaurants. Appellant required separate credit applications for each corporate entity. Appellee's wife never asked him if they needed a separate application for each restaurant. Burkhart picked up the checks from the restaurants, but never looked at them. He did not notice the checks were issued by different corporations. Burkhart admitted that he could have discovered the ownership of the restaurants from Burger King or the Secretary of State.
David Ousterout testified that he is director of credit services for appellant. He obtained a Dun Bradstreet report on Buckeye Foods, Inc. before extending credit. The report listed companies with common ownership, including Buckeye Foods-Harvard, Inc., Buckeye Foods-Kinsman, Inc., and Buckeye Euclid/Superior, all d.b.a. Burger King. The delivery list stated that some of the restaurants were located on Harvard, Kinsman, Superior and Euclid Avenue. Ousterout said he did not have the list of addresses attached to the credit application. Ousterout believed they were not servicing the other corporations.
Appellee's wife, Tyra Eanes, testified that she asked Burkhart whether they needed separate applications for each restaurant. Burkhart said they could just attach a list of stores. Burkhart never asked if the restaurants were owned by separate corporations. Mrs. Eanes told appellant's employee, Melanie, that the restaurants must be billed separately because they are separate companies.
 I.
Appellant argues its first through fifth assignments of error together. They state:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONCLUDING THAT THERE WAS NOT A MEETING OF THE MINDS BETWEEN THE CONTRACTING PARTIES IN THAT THE APPELLEES WOULD BE PERSONALLY RESPONSIBLE FOR ALL GOODS PURCHASED UNDER THE EXPRESS TERMS OF THE CONTRACT, REGARDLESS OF THE DELIVERY LOCATIONS DESIGNATED BY THE APPELLEE.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT ADDITIONAL CORPORATE IDENTITIES DISCLOSED BY THE APPELLEE THROUGH BANKRUPTCY PROCEEDINGS AFTER CONTRACT FORMATION WAS A DEFENSE TO THE EXTENT OF HIS PERSONAL OBLIGATION.
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONSIDERING THE SUBJECTIVE INTENTIONS OF THE APPELLEE, AND NOT HIS OBJECTIVE MANIFESTATIONS ALONE, IN DERIVING THE INTENT OF THE CONTRACTING PARTIES AT THE TIME OF CONTRACT FORMATION.
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT BINDING THE APPELLEE TO STANDARDS OF GOOD-FAITH AND FAIR-DEALING AT THE TIME OF CONTRACT FORMATION.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT A CONTRACT FOR A SALE OF GOODS MAY BE VOID DUE TO NEGLIGENCE ON BEHALF OF ONE OF THE CONTRACTING PARTIES AT THE TIME OF CONTRACT FORMATION.
Courts construe guaranty agreements in the same manner as they interpret contracts. G.F. Business Equip. v. Liston (1982),7 Ohio App.3d 223, 224; Stone v. National City Bank (1995),106 Ohio App.3d 212. The court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. Uebelacker v. Cincom, Inc.
(1988), 48 Ohio App.3d 268, 271; McConnell v. Hunt Sports Ent.
(1999), 132 Ohio App.3d 657.
The trial court could have found that the contract was unambiguous. The guarantee states that the guarantee is in consideration of the extension of credit to the above named customer. Buckeye Foods, Inc. was the sole applicant for the line of credit. Therefore, it was unambiguous that Eanes was guaranteeing only the debts of the applicant, Buckeye Foods, Inc.
The court may have found that the attached delivery addresses created an ambiguity as to whether appellee personally guaranteed the purchases of all the corporations which owned the restaurants. If the contract was ambiguous, the court must examine the evidence and determine the intent of the parties. See Skivolocki v. E. OhioGas Co. (1974), 38 Ohio St.2d 244; Cline v. Rose (1994), 96 Ohio App.3d 611. An interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion. Center Ridge Ganley, Inc. v. Stinn
(1987), 31 Ohio St.3d 310, 314; C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279.
A guarantor is bound only by the precise words of his contract. G.F. Business Equip., Inc. v. Liston (1982), 7 Ohio App.3d 223,224; American Hardware Supply, Inc. (1989), 63 Ohio App.3d 838,844; Harcros Lumber Bldg. Supplies, Inc. v. Swabado
(June 30, 1998), Belmont App. No. 96-BA-66, unreported. The guarantee must clearly manifest an intent to bind the defendant.G.F. Business Equip., Harcros, supra; Yearling Properties, Inc. v.Tedder (1988), 53 Ohio App.3d 52. The words of the guarantee are read in their ordinary sense when read in the light of the surrounding circumstances and the object intended to be accomplished. American Hardware, Harcros, supra.
The guarantee stated that appellee made the guarantee in consideration of the credit extended to the above named customer. Buckeye Foods, Inc. was the only entity applying for credit. The addresses of the stores were listed as delivery addresses only. The evidence supports the finding that appellant was aware of the other corporate entities, and did not require separate guarantees. If the creditor is aware of another corporate entity and does not ask for a separate guarantees, the guarantor is not responsible for the debts of the separate corporation. See American HardwareSupply, supra. Appellant's mistaken assumption that the restaurants were all owned by Buckeye Foods, Inc. can not alter the terms of the contract. See Yearling Properties, supra; ScherersCommunications, Inc. v. National Media Marketing, Inc. (1994), Franklin App. No. 93APE09-1254, unreported. The trial court did not abuse its discretion in finding that the parties did not have a meeting of the minds that appellee would be personally liable for the debts of the other corporations.
Additionally, the statute of frauds requires that a promise to answer for the debt of another must be in writing. The application for credit was an insufficient writing, as it did not express with reasonable certainty an intent to guarantee the debts of the other corporations. See Sherman v. Johnson (1953), 159 Ohio St. 209,215-216; Busler v. DH Mfrs., Inc. (May 30, 1995), Franklin App. No. 94APE08-1137, unreported.
Accordingly, these assignments of error are overruled.
 II.
Appellant's sixth assignment of error states:
 IN THE ALTERNATIVE IF THE APPELLEE IS NOT PERSONALLY LIABLE UNDER THE EXPRESS TERMS OF THE GUARANTEE, THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE APPELLEE WAS UNJUSTLY ENRICHED AND SHOULD THEREFORE BE LIABLE THROUGH THE FORMATION OF QUASI-CONTRACTS TO WHICH PERSONAL LIABILITY ATTACHED THROUGH THE USAGE OF TRADE IN THE INDUSTRY.
The elements of quasi-contract are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (unjust enrichment). Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179. The concept of unjust enrichment includes not only loss by the plaintiff but gain by the defendant, with a tie of causation between them. Fairfield Ready Mix v. Walnut Hills Associates, Ltd.
(1988), 60 Ohio App.3d 1.
Appellant sustained a loss because it was not paid for the paper products sold. Buckeye Foods-Kinsman, Buckeye Foods-Harvard and Buckeye Euclid/Superior had a gain because they received the products and did not pay for them. Appellee is only one of the owners of these corporations. Appellee did not personally receive a benefit, so he was not unjustly enriched. A shareholder is only personally liable for the debts of a corporation in certain circumstances, which were not proven here. See Koch v. Lind
(1997), 121 Ohio App.3d 43; Alside Supply Co. v. Wager (1993),89 Ohio App.3d 539.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.