CONWAY, Appellant,

v.

CALBERT; Dispatch Consumer Services, Inc., Appellee.

[Cite as *Conway v. Calbert* (1997), 119 Ohio App.3d 288.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE08–1095.

Decided April 22, 1997.

*Walter W. Reckless,* for appellant.

*Gerald L. Roderick,* for Robert D. Calbert.

*Lane, Alton & Horst, Theodore M. Munsell, Belinda S. Barnes* and *Kimberly S. Davis,* for appellee, Dispatch Consumer Services, Inc.

LAZARUS, Judge.

Plaintiff-appellant, Shirley L. Conway, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Dispatch Consumer Services, Inc. ("DSC"), on Conway's claims of negligence, trespass, and nuisance. For the reasons that follow, we affirm the decision of the trial court.

DCS arranges for the distribution of plastic bags containing advertising to approximately eight hundred two thousand households per week in central Ohio. On February 21, 1994, Conway walked out the front door of her daughter's

townhouse apartment at 1485C Elaine Road, Columbus, Ohio. Conway stepped on a plastic bag lying on the stoop in front of the door. She slipped and fell, injuring her ankle.

Conway brought suit against DCS and Robert D. Calbert, the carrier who delivered the plastic bag, alleging negligence, trespass, and nuisance. Conway claimed that Calbert was an employee of DCS and, therefore, that DCS was responsible for Calbert's allegedly tortious conduct. DCS moved for summary judgment on the grounds that Calbert was an independent contractor and not an employee of DCS, and that no employee under its control trespassed or created a nuisance.

The trial court held that as a matter of law Calbert was an independent contractor because DCS did not have the right to control the manner or means of doing the work and that Calbert was responsible to DCS only for the final product, the successful delivery of the bags of advertising materials to residences in his delivery area. The trial court further held that the Restatement of Law 2d, Torts (1965) 419, Section 427B exception to the general rule of nonliability for the actions of an independent contractor did not apply to the facts of the case. The trial court granted DCS's motion for summary judgment on July 8, 1996, and this appeal followed.

Appellant raises three assignments of error for our consideration:

1. "The trial court erred in granting summary judgment in favor of Defendant–Appellee, Dispatch Consumer Services, Inc. ('DCS'), because material issues of fact exist as to whether Defendant, Robert D. Calbert, was an independent contractor or a servant of DCS."

2. "The trial court erred in granting summary judgment in favor of Defendant–Appellee, Dispatch Consumer Services, Inc. ('DCS'), because Restatement 2d, Torts, § 427B applies to hold DCS liable for the injuries Plaintiff–Appellant sustained as a result of the negligent delivery of the DCS plastic bags of advertising materials without authority or permission of the land owner or resident, and because material issues of fact exist as to whether the delivery of the plastic bags of advertising materials involved a trespass upon the land of another or the creation of a public or private nuisance."

3. "The trial court erred in granting summary judgment in favor of Defendant–Appellee, Dispatch Consumer Services, Inc. ('DCS'), because material issues of fact exist on whether DCS knew, or had reason to know, that the delivery of its plastic bags of advertising materials involved a trespass upon the land of another or the creation of a public or private nuisance."

Appellate review of summary judgments is *de novo*. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272; *Midwest*

*Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. Summary judgment is appropriate only if there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law and, construing all evidence in favor of the nonmoving party, reasonable minds could reach only a conclusion in favor of the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

█ A party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. The burden then shifts to the nonmoving party, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. Civ.R. 56(E) provides:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

█ In her first assignment of error, Conway asserts that genuine issues of material fact exist as to whether Calbert was an employee of DCS or an independent contractor. Under the doctrine of *respondeat superior,* a master is liable in certain cases for the wrongful acts of his servant. *Mayfield v. Boy Scouts of Am.* (1994), 95 Ohio App.3d 655, 660, 643 N.E.2d 565, 568–569. Whether the relationship of someone to an employer is that of master-servant or independent contractor turns on who has the right to control the manner and means of doing the work. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of the syllabus.

" '[I]f the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created.' " *Id.* at 146, 524 N.E.2d at 883, quoting *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, 25 O.O. 531, 48 N.E.2d 234, paragraph two of the syllabus.

The court in *Bostic* stated that the determination of who has the right to control must be made by examining the individual facts of each case, including who controls the details and quality of the work; who controls the hours that are

worked; who selects the materials, tools and personnel used in performing the work; who selects the routes that are traveled; the length of employment; the type of business involved; the method of payment; and any pertinent agreements or contracts. *Id.* at 146, 524 N.E.2d at 883–884. The court then determined that if the evidence is not in conflict, or if the facts are admitted, the question of whether a person is an employee or an independent contractor becomes one of law. *Id.* "However, the issue becomes a jury question where the claimant offers some evidence that he was an employee rather than an independent contractor." *Id.* at 146–147, 524 N.E.2d at 884.

■ The evidence before the trial court indicated that DCS enters into written agreements with individuals to deliver plastic bags of advertising materials to households in specified geographic areas of central and northern Ohio. The agreement states that a carrier is an independent contractor, is paid on a per-piece basis, is not covered by workers' compensation, is responsible for paying all taxes and expenses, and is to carry his or her own insurance. The agreement states that it is effective for a period of thirty days and is automatically renewed from week to week thereafter, but may be canceled by either party upon a week's notice. According to the agreement, the carrier is to furnish, at his or her own expense, any equipment or supplies necessary to perform the work, is permitted to employ or subcontract others to perform the work, and retains the right to perform the same services for a competitor, as well as to engage in any business, enterprise or employment as long as it does not interfere with the contract between the carrier and DCS. The agreement states that the carrier is solely responsible for the satisfactory delivery of the advertising materials in the plastic bags within the contracted area, and that DCS is to furnish the advertising material and plastic bags so as to allow the carrier to assemble the materials in sufficient time to deliver the materials within the delivery period specified in the contract between DCS and the advertisers.

Calbert's route coordinator, Jeanette Watkins, called weekly to tell Calbert the list of materials he was to get that week. If DCS received a call from a resident that did not want delivery, Watkins would call the carrier that week and tell him or her not to deliver to that address. According to Calbert, Watkins instructed him to hang the bags on doors or out of people's way, but not to put them in mail boxes. Watkins checked to see if the bags were delivered. DCS provided Calbert with a map of his delivery area, which contained "special instructions." For example, at the bottom of the map is printed "DO NOT DELIVER" and nine addresses. The map also contains instructions that at certain addresses the carrier is to hang the plastic bag in specific locations. In his deposition, Calbert testified that DCS and Watkins did not tell him what route to follow. He was provided a route sheet "and that was about it." It was left to his discretion what

route to follow, and he was paid the same amount no matter how long it took him to deliver the material. Although instructed to deliver on Mondays, Calbert testified that he often delivered on Sunday afternoons with no adverse consequences from DCS. Calbert testified that his wife assisted him by driving, and his son helped with deliveries.

Conway asserts that DCS exercised control over the manner and means of work because DCS instructed Calbert weekly what materials were to be placed in the bags and that he was instructed where to deliver the bags, when to deliver the bags, and how to deliver the bags, either by hanging them or doors or placing them beside the door, out of people's way. DCS argues that the record demonstrates DCS did not reserve or contract for the right to control the details of the work, the hours worked, the tools and personnel used, or the route the carrier traveled.

Based on our review of the record, the material facts are not in dispute. Calbert set his own hours for delivery within the time frame set out by DCS. He furnished his own vehicle and used his family to help him complete his deliveries. Although provided a map of the delivery area, he was free to select the route and the order in which he delivered to the households in the delivery area. The contract was terminable at will with one week's written notice required. Payment was on the basis of the number of items delivered, four cents for the first piece of material in each packet and one-half cent for each additional piece of material. Calbert was responsible for his own taxes and expenses and was not covered by workers' compensation. The written agreement allowed the carriers to subcontract their duties. The facts show that DCS did not exercise or retain the right to exercise any significant degree of control or direction over the manner and means of delivery. Through its route coordinators, DCS checked on the end result, whether the plastic bags with advertising were delivered to the residences within the time frame specified. Calbert controlled the method by which the results were obtained. Accordingly, we agree with the trial court that Calbert worked as an independent contractor rather than an employee of DCS. The first assignment of error is not well taken.

In her second and third assignments of error, Conway argues that, even if Calbert is an independent contractor rather than an employee, DCS cannot avoid liability for Calbert's acts because a genuine issue of material fact exists as to whether DCS employed carriers to do work that DCS knew or had reason to know was likely to involve a trespass or a nuisance. Conway relies on 3 Restatement of the Law 2d, Torts (1965) 419, Section 427B:

"One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of

another or the creation of a public or private nuisance, is subject to liability for harm resulting to others from such trespass or nuisance."

Comment *a* to Section 427B states that this section is viewed by the courts as an exception to the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. Conway acknowledges that Section 427B has not been adopted in Ohio.

Conway presented affidavits from the resident of the apartment where the accident happened, the maintenance person, and the owner of the complex, all of whom stated that the bags of advertising materials are a nuisance. Conway claims that the bags constitute litter, that litter constitutes a nuisance, and that the Columbus City Codes ("C.C.") and state statute prohibit depositing litter on private property. Conway also presented evidence that DCS did not obtain permission from the owner or the occupants of the apartment complex to deliver the bags of advertising materials.

In addition to pointing out that Ohio has not adopted Restatement of Torts Section 427B, DCS argues that the affidavits submitted by Conway that the bags constitute a nuisance are inadmissible legal conclusions and should not be considered by the court in its review of the motion for summary judgment. DCS claims that the bags of advertising materials do not constitute litter as defined by statute and ordinance and, accordingly, would not provide a basis for holding DCS liable under the nuisance prong of Section 427B. DCS also argues that the act of delivering bags of advertisements does not constitute a trespass, absent express orders from the owner or occupant.

Under Ohio law, a trespasser is one who without authorization goes upon the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience, and where no mutuality of interest exists between the trespasser and the owner or occupant. *Keesecker v. G.M. McKelvey Co.* (1943), 141 Ohio St. 162, 166, 25 O.O. 266, 268, 47 N.E.2d 211, 213–214; *Allstate Fire Ins. Co. v. Singler* (1968), 14 Ohio St.2d 27, 29, 43 O.O.2d 43, 44–45, 236 N.E.2d 79, 80–81; *Northfield Park Assoc. v. Northeast Ohio Harness* (1987), 36 Ohio App.3d 14, 18, 521 N.E.2d 466, 471–472. An owner or one with a possessory interest in the premises may prohibit solicitors, peddlers, or other like callers from entering, and the use of a sign erected on the premises indicating that such persons are not wanted or permitted, makes a trespasser of anyone who disregards it. 60 American Jurisprudence 2d (1987) 1101, Peddlers, Solicitors and Transient Dealers, Section 100, at fn. 62. At common law, the presence of a knocker or a bell on the door signified a license to attempt entry, preventing, in the absence of notice or order to the contrary, initial entry by solicitors and peddlers from being a trespass. *Citizens for a Better Environment*

*v. Park Ridge* (C.A.7, 1975), 567 F.2d 689, 691; *Breard v. Alexandria* (1951), 341 U.S. 622, 626, 71 S.Ct. 920, 923–924, 95 L.Ed. 1233, 1239; 60 American Jurisprudence 2d (1987), Peddlers, Solicitors and Transient Dealers, Section 100.

In the instant case, Conway submitted an affidavit from the owner of the apartment complex and one from the resident of 1485C Elaine Road, where appellant was injured, that they had requested that the packets of advertising materials not be delivered. However, the affidavits are silent as to when these requests were made, and Conway has not argued that DCS was ever put on notice prior to the accident that DCS carriers were prohibited from distributing materials in the complex. Under these facts, we agree with the trial court that Conway failed to establish the elements of trespass when Calbert delivered the plastic bags of advertisements inside the apartment complex.

With respect to nuisance, R.C. 3767.32(D)(1) defines "litter" as "garbage, trash, waste, rubbish, ashes, cans, bottles, wire, paper, cartons, boxes, automobile parts, furniture, glass, or anything else of an unsightly or unsanitary nature." C.C. 2329.01(D)(1) defines it similarly. The advertisements delivered by Calbert do not constitute litter as defined by statute or ordinance.

An absolute nuisance consists of "either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph one of the syllabus.

As distinguished from absolute nuisance, "a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, at paragraph three of the syllabus.

The cases in which a nuisance has been found have involved dangerous combustibles, blasting operations, and wild animals. *Curtis v. Ohio State Univ.* (1986), 29 Ohio App.3d 297, 301, 29 OBR 363, 366–367, 504 N.E.2d 1222, 1226–1227. Even if we were to adopt the Restatement of Torts Section 427B exception to the general rule of nonliability for the actions of an independent contractor, there are no genuine issues of material fact concerning whether DCS knew or had reason to know that delivery of the plastic bags constituted either a trespass or a nuisance. The second and third assignments of error are not well taken.

Based on the foregoing, the three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and CLOSE, JJ., concur.