[Cite as *Reddy v. Plain Dealer Publishing Co.*, 2013-Ohio-2329.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98834**

---

## WILLIAM F. REDDY

PLAINTIFF-APPELLANT

vs.

## PLAIN DEALER PUBLISHING CO.

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-773256

**BEFORE:** McCormack, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 6, 2013

**ATTORNEYS FOR APPELLANT**

Mary Sotera
Weston Hurd, L.L.P.
The Tower at Erieview
1301 East 9th St., Suite 1901
Cleveland, OH 44114

Michael A. Dolan
The Dolan Law Firm, L.L.C.
3890 Rocky River Drive, Suite 1S
Cleveland, OH 44111


**ATTORNEYS FOR APPELLEE**

Melissa A. Degaetano
Michael K. Farrell
Baker & Hostetler L.L.P.
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH    44114

TIM McCORMACK, J.:

{¶1}   Appellant, William F. Reddy ("Reddy"), appeals from a judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of the Cleveland Plain Dealer Publishing Co. ("The Plain Dealer") regarding Reddy's claim that The Plain Dealer committed trespass when it delivered a free publication to his residence without his consent.

{¶2}   The question to be answered in this appeal is whether delivering a free publication to a residence, when the resident has not expressly objected to the delivery, constitutes trespass.   For the following reasons, we answer the question in the negative and affirm the trial court.

### Substantive Facts and Procedural History

{¶3}   Beginning in June 2009 and for over one year, The Plain Dealer delivered a free weekly publication called The PD Wrap-Up to Reddy's residence by depositing the publication in his front yard.    The delivery of the free weekly publication began after Reddy's subscription to the newspaper ended.   The free publication contains articles on people, business, entertainment, and sports, as well as crossword puzzles, recipes, horoscopes, and advertisements.   The free publication is wrapped in a translucent plastic bag.   Prominently displayed at the first page under the heading "PD WRAP-UP" are a local telephone number and a toll free number for the recipients to call for any delivery concerns.

**{¶4}** The Plain Dealer did not contact Reddy to inquire whether he wanted the free publication; neither had Reddy contacted The Plain Dealer to express anything including an objection to the delivery. There were no signs in Reddy's yard prohibiting trespassing or solicitations. The Plain Dealer stopped the delivery of the publication to Reddy's house once he filed the lawsuit. By Reddy's own account, the only harm he suffered from the delivery of the publication was the inconvenience of having to pick it up and throw it into the garbage can.

**{¶5}** Reddy had previously filed a complaint in 2011 alleging trespass by The Plain Dealer, and after conducting discovery and moving for summary judgment, Reddy voluntarily dismissed the case. Shortly afterward, Reddy's counsel filed a similar complaint against The Plain Dealer.[1] In January 2012, Reddy re-filed the case.[2]

**{¶6}** The Plain Dealer moved for summary judgment, which the trial court granted. Reddy now appeals from that judgment, raising two assignments of error for our review. The first assignment of error states: "The trial court erred in granting appellee summary judgment when the uncontroverted facts demonstrate that appellee committed the tort of trespass each time it entered upon appellant's private property without obtaining appellant's permission."

---

[1] Counsel voluntarily dismissed that case two months after the trial court granted summary judgment in favor of The Plain Dealer in the present case.

[2] The complaint was filed as a putative class action.

**{¶7}** We review summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

## The Trespass Claim

**{¶8}** The common-law tort in trespass upon real property occurs when "a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * * ." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998). This court similarly defined the tort as "(1) an unauthorized intentional act and (2) entry upon land in the possession of another." *See also* *L.A.D.S. Dev. Co. v. McCrarry*, 8th Dist. No. 89816, 2008-Ohio-2367, ¶ 17.

**{¶9}** Reddy alleges The Plain Dealer committed the tort of trespass by depositing its publication on a residence without first obtaining the resident's permission. The Plain Dealer asserts that it has a privilege rooted in the First Amendment to distribute the publication absent a command from the resident to refrain from distributing the publication.

{¶10} The trespass claim presented by Reddy is a novel one.   Our research does not disclose any case law directly on point.    Both parties cite a 70-year-old decision from the United State Supreme Court, *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), as authority in support of their position.

{¶11} In *Struthers*, a Jehovah's Witness knocked on doors and rang doorbells to distribute leaflets advertising a religious meeting.   She was convicted of violating a city ordinance that made it unlawful "for any person distributing handbills, circulars or other advertisements to ring the door bell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving" such materials.   The ordinance had been enacted to protect residents from being disturbed in the hours of rest, and to prevent criminals from posing as canvassers.   The defendant argued that the ordinance violated her First Amendment rights.

{¶12} The Supreme Court of the United States reversed the defendant's conviction, holding that the municipal ordinance prohibiting any person to knock on doors or otherwise summon to the door the occupants of a residence for the purpose of distributing to them handbills or circulars was invalid as applied to the defendant distributing advertisements for a religious meeting.

{¶13} *Struthers* differed from the present case in two ways.   First, it involved the distribution of religious materials, while the present case involves a publication containing mostly advertisements.   Second, *Struthers* involved an individual knocking on doors and summoning an occupant to the door to receive a leaflet, while the present

case involves the depositing of a publication in residents' yards — a much less intrusive method of delivery. Because of these factual differences, *Struthers* is not directly on point. Nonetheless, the court's reasoning in that case provides some guidance in our analysis of the issue before us, that is, whether a distribution of publications to households without prior consent constitutes trespass. The *Struthers* court reasoned:

> Traditionally the American law punishes persons who enter onto the property of another *after having been warned by the owner to keep off*. * * * We know of no state which, as does the Struthers ordinance in effect, makes a person a criminal trespasser if he enters the property of another for an innocent purpose *without an explicit command from the owners to stay away*. The National Institute of Municipal Law Officers has proposed a form of regulation to its member cities which would make it an offense for any person to ring the bell of a householder who has appropriately indicated that he is unwilling to be disturbed. This or any similar regulation leaves the decision as to whether distributers of literature may lawfully call at a home where it belongs — with the homeowner himself. A city can punish those who call at a home *in defiance of the previously expressed will of the occupant* * * *. In any case, the problem must be worked out by each community for itself with due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributors from the home.

(Footnotes omitted and emphasis added.) *Id*. at 147-149.

{¶14} The court's reasoning makes it apparent that, regardless of the content of the printed materials distributed, and regardless of whether it involves the more intrusive method employed by the Jehovah's Witness (knocking on the doors or ringing the doorbells to summon an occupant to the door to receive the materials), or the much less intrusive method of delivery employed by The Plain Dealer (depositing the publication in

the yard), the distribution of literature enjoys First Amendment protection, *in the absence of an explicit command from the property owners to stay away.*

**{¶15}** Reddy claims *Struthers* created "an affirmative First Amendment duty to 'knock on the door or ring the doorbell' on all persons seeking to enter private property." Reddy's claim is not supported by our reading of the case. Rather, applying *Struthers's* reasoning to this case, The Plain Dealer's distribution of The PD Wrap-up, in the absence of a *previously expressed will of the resident* objecting to it, enjoys the privilege derived from the First Amendment and is not considered by law as committing the tort of trespass. The PD Wrap-up supplies a toll free number for residents to call if they object to its delivery, but Reddy never voiced his objection prior to filing the lawsuit.

**{¶16}** As the court in *Struthers* reminded us, the right of freedom of speech and press "embraces the right to distribute literature, and necessarily protects the right to receive it." (Citation omitted.) *Id*. at 143. Indeed, some households may actually enjoy the weekly delivery of the free publication and occasional coupons. To prohibit The Plain Dealer from delivering the publication without first obtaining a consent from each homeowner would hinder a right to receive information embraced by the First Amendment.

**{¶17}** Reddy contends that The PD Wrap-Up comprises exclusively of advertisements and, therefore, is not worthy of any First Amendment protections. First, our own examination of a copy of the publication contained in the record shows that it is comprised of three pages of newspaper content — primarily lifestyle articles — and a

crossword puzzle, along with a Parade magazine and advertisements. It does not consist exclusively of advertisements, as Reddy claims.

{¶18} Second, even if the publication were to comprise exclusively of advertising materials, it has long been established that commercial speech also enjoys the protection of the First Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Linmark Assoc., Inc. v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). "[S]peech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another." (Citations omitted.) *Virginia State Bd. of Pharmacy* at 761. Contrary to Reddy's assertion, the mostly commercial nature of The PD Wrap-up does not preclude the protection of the First Amendment.

{¶19} Reddy cites several cases to support his position that the First Amendment does not confer The Plain Dealer a privilege to deliver its publication on his property without first obtaining his consent. None of the cases cited are pertinent. In *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 626 N.E.2d 59 (1994), the owners of shopping malls filed a complaint seeking injunctive relief against a protester who repeatedly picketed and handbilled on the mall and refused to leave when asked by the mall owners. The court held that an injunction prohibiting "picketing, patrolling, handbilling, soliciting, or engaging in any other similar activities" on the property of a privately owned shopping center is not an unconstitutional prior restraint on speech in violation of the free speech guarantees accorded by the Ohio Constitution. *Id.* at syllabus. We do not see the

relevance of *Eastwood* to this case — the conduct complained of in that case was an individual engaging in picketing on private properties and refusing to leave after repeated requests by the owners, which is qualitatively different from the deposition of a publication in a yard without the homeowner's express command to stay away.

{¶20} Similarly, Reddy's reliance on *Cincinnati v. Thompson*, 96 Ohio App.3d 7, 643 N.E.2d 1157 (1st Dist.1994), is misplaced. In that case, some anti-abortion activists were charged with trespass after refusing to leave the premises of a medical center after told to leave. The court found the enforcement of the trespass statute against these defendants under the circumstances did not violate the First Amendment. *Thompson,* too, is distinguishable because the defendants there refused to leave the premises after being told to leave.

{¶21} Finally, we note that even if we do not analyze this case from the First Amendment standpoint, there is case law indicating The Plain Dealer's conduct does not constitute trespass. In *Conway v. Calbert*, 119 Ohio App.3d 288, 294-295, 695 N.E.2d 271 (10th Dist.1997), a distributor distributed plastic bags of advertisements inside an apartment complex. The issue was whether such conduct constituted trespass. The Tenth District did not address the implication of the First Amendment on the matter, but it held, nonetheless, that such conduct did not constitute trespass where the distributor was never put on notice that the delivery of these materials inside the apartment complex was prohibited. *Id.* at 295. The Tenth District explained that a property owner "may prohibit solicitors, peddlers, or other like callers from entering, and the use of a sign

erected on the premises indicating that such persons are not wanted or permitted, makes trespassers of anyone who disregards it." *Id.* at 294, citing 60 American Jurisprudence 2d, 1101, Peddlers, Solicitors and Transient Dealers, Section 100, at n. 62 (1987).

**{¶22}** We note that there are a variety of activities (which may or may not concern printed materials) involving an entry into private properties without a prior consent of the property owner, for example, campaign workers delivering candidates' literature or girl scouts selling cookies. Consent is implied in these activities as a matter of community custom and tradition, and they are not deemed trespasses unless there is a command or notice to stay away. The court in *Conway* explained that at common law, "the presence of a knocker or a bell on the door signified a license to attempt entry, preventing, in the absence of notice or order to the contrary, initial entry by solicitors and peddlers from being a trespass." *Id.* at 294, citing *Citizens for a Better Environment v. Park Ridge*, 567 F.2d 689, 691 (7th Cir.1975); *Breard v. Alexandria*, 341 U.S. 622, 626, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); 60 American Jurisprudence 2d, Peddlers, Solicitors and Transient Dealers, Section 100 (1987).

**{¶23}** Thus, regardless of whether The Plain Dealer's conduct in delivering a free publication to households without first obtaining a consent is protected under the First Amendment, such an activity falls under the class of activities where consent could be implied from community custom and tradition, in the absence of an explicit command to stay away. Holding The Plain Dealer liable for trespassing would turn various groups of citizens who similarly distribute literature door to door without specific consent from the

homeowners into trespassers. As the Supreme Court of United States reminded us, "[d]oor to door distribution of circulars is essential to the poorly financed causes of little people." *Struthers*, 319 U.S. at 145-146, 63 S.Ct. 862, 87 L.Ed. 1313. Although The Plain Dealer is a commercial enterprise, we do not see why it should be treated differently than other distributors of literature under this well-accepted and time-honored practice.

{¶24} Based on the foregoing analysis, the trial court properly granted summary judgment in favor of The Plain Dealer on Reddy's trespass claim. The first assignment of error is without merit.

## Discovery

{¶25} Reddy's second assignment of error states: "The trial court abused its discretion and committed prejudicial error when it denied appellant's right to conduct discovery."

{¶26} Discovery matters fall within the broad discretion of the trial court, and we review a trial court's decision in discovery matters for an abuse of discretion. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable, rather than a mere error in judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶27} The record reflects that, although discovery was not conducted in the present case, discovery was conducted in the first case filed by Reddy and in the case filed by his counsel where The Plain Dealer's Vice President of Circulation, Robert

Perona, was deposed. When Reddy refiled his case, he filed the transcript of Perona's deposition as evidence.

**{¶28}** On March 12, 2012, Reddy sent a Civ.R. 30(B)(5) notice to take deposition, duces tecum, to The Plain Dealer, for a deposition to take place on April 17, 2012, apparently seeking information regarding the newspaper's advertising revenues, rates, and other financial information. The next day, on March 13, 2012, the trial court granted The Plain Dealer's motion for leave to file a motion for summary judgment, instanter. Two days later, Reddy filed a motion to perpetuate discovery under Civ.R. 56(F), which permits a party to seek a continuance of summary judgment proceedings in order to conduct further discovery. The motion stated that discovery was necessary to "obtain facts related to the character, motive, and purpose of Defendant's conduct/speech." The affidavit attached to the motion from Reddy's counsel stated only that "I reasonably believe that the discovery requested by [Reddy] is reasonable and necessary to allow a proper and complete response to [The Plain Dealer's] Motion for Summary Judgment."

**{¶29}** On April 11, 2012, Reddy responded to The Plain Dealer's motion for summary judgment and he also filed a cross-motion for summary judgment. The next day, the court denied Reddy's Civ.R. 56(F) motion for further discovery on the grounds that Reddy failed to articulate with specificity how the information sought by the deposition regarding The Plain Dealer's advertisement rates and other revenue information will assist in demonstrating a genuine issue of fact pertinent to the trespass

claim.   The trial court subsequently granted The Plain Dealer's motion for summary judgment.

{¶30} Reddy claims the trial court abused its discretion in denying his right to discovery, specifically his Civ.R. 56(F) motion to continue the summary judgment proceedings for further discovery.

{¶31} The trial court enjoys considerable discretion in the regulation of discovery proceedings, and we will not reverse the judgment of the trial court on a Civ.R. 56(F) ruling absent a showing of a clear abuse of discretion.   *Penix v. Avon Laundry & Dry Cleaners*, 8th Dist. No. 91355, 2009-Ohio-1362, ¶ 30. "The party seeking additional time to respond to a motion for summary judgment must present sufficient reasons that would justify the requested continuance. * * * There must be a factual basis stated and reasons given why the party cannot present facts essential to its opposition to the motion." (Citations omitted.)   *Id*. at ¶ 31.   To grant a Civ.R. 56(F) motion, the court must be convinced that there is a likelihood of discovering some such facts.   *Id*. at ¶ 32.

{¶32} Here, Reddy vaguely alleged that the discovery was needed to identify "the character, motive and purpose" of The Plain Dealer's conduct.   The affidavit by his counsel, attached to the Civ.R. 56(F) motion, stated nothing more than his belief that the discovery is "reasonable and necessary."

{¶33} The Plain Dealer's "motive and intent" in distributing its free publication is not pertinent to this claim of trespass, because, as we   explain above, even if the PD Wrap-Up were to comprise only of advertisements, commercial speech also enjoys First

Amendment protection, absent an explicit command from a resident objecting to its distribution. It is undisputed that Reddy had not voiced an objection to the delivery of the publication prior to his filing of the lawsuit. Therefore, Reddy failed to show further discovery would demonstrate or negate a fact relevant to an issue in the motion for summary judgment. The trial court did not abuse its discretion in not allowing further discovery. The second assignment of error lacks merit.

### Attorney Fees

{¶34} Although the trial court granted summary judgment in favor of The Plain Dealer, it denied The Plain Dealer's request for attorney fees pursuant to R.C. 2323.51 and Civ.R. 11. The Plain Dealer filed a cross-appeal claiming the trial court erred in denying attorney fees without a hearing.

{¶35} R.C. 2323.51 and Civ.R. 11 allow an award of attorney fees as a sanction for frivolous conduct. Pursuant to R.C. 2323.51, a party adversely affected by frivolous conduct may file a motion for an award of attorney fees. R.C. 2323.51 defines "frivolous conduct," in pertinent part, as:

> (a) Conduct of a * * * party to a civil action * * * that satisfies any of the following:
>
> (i) It obviously serves merely to harass or maliciously injure another party to the civil action * * * or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

**{¶36}** Civ.R. 11 states that the signature of an attorney constitutes a certificate that, to the best of the attorney's knowledge, there is good ground to support a filing and the filing is not interposed for delay.

**{¶37}** An appellate court reviews a trial court's decision to impose sanctions pursuant to Civ.R. 11 and R.C. 2323.51 for an abuse of discretion. *In re: Carothers*, 8th Dist. No. 96369, 2011-Ohio-6754, ¶ 10; *Mitchell v. W. Res. Agency*, 8th Dist. No. 86708, 2006-Ohio-2475, ¶47. Under either rule, an award of attorney fees is within the discretion of the trial court. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). A reviewing court will not reverse the trial court's decision on whether to award sanctions absent an abuse of discretion. *Ron Scheiderer & Assoc. v. London*, 81 Ohio St.3d 94, 98, 1998-Ohio-453, 689 N.E.2d 552. The trial court is in the best position to appraise the conduct of the parties, and we must defer to the trial court's ruling on a motion for sanctions. *First Place Bank v. Stamper*, 8th Dist. No. 80259, 2002-Ohio-3109, ¶ 17.

**{¶38}** The Plain Dealer alleges Reddy's claim of trespass was frivolous and Reddy engaged in further frivolous conduct by harassing The Plain Dealer and deliberately and unnecessarily driving up the costs of the litigation.

**{¶39}** A claim is "frivolous" if "[i]t is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii). Although both the trial court and this court determine that

Reddy's trespass claim lacks merit, the mere fact that the claims were unsuccessful is not enough to warrant sanctions. *Halliwell v. Bruner*, 8th Dist. No. 77487, 2000 Ohio App. LEXIS 5896, *23-24 (Dec. 14, 2000).

{¶40} The Plain Dealer also asserts that Reddy's repeated request of discovery, including the filing of the Civ.R. 56(F) motion, seeking The Plain Dealer's financial and revenue information, which is irrelevant to his trespass claim, rises to the level of frivolous and sanctionable conduct.

{¶41} We are mindful of the chilling effect applying the sanction remedy can have upon zealous advocacy. *Carr v. Riddle*, 136 Ohio App.3d 700, 706, 737 N.E.2d 976 (8th Dist.2000). As the trial judge presided over this matter throughout the extensive litigation, we defer to the trial judge for the determination that attorney fees are not warranted in this case. Furthermore, neither R.C. 2323.51 nor Civ.R. 11 require a trial court to conduct a hearing before denying a motion for attorney fees. *Donaldson v. Todd*, 174 Ohio App.3d 117, 2007-Ohio-6504, 881 N.E.2d 280, ¶ 9 (10th Dist.); *First Place Bank v. Stamper*, 8th Dist. No. 80259, 2002-Ohio-3109. The Plain Dealer's assignment of error in its cross-appeal is without merit.

{¶42} The judgment of the Cuyahoga County Court of Common Pleas is affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR