The New York, Chicago & St. Louis Rd. Co., Appellant, *v.* The Heffner Construction Co. et al., Appellees.

[Cite as N. Y., C. & St. Louis Rd. Co. v. Heffner Const. Co., 9 Ohio App. 2d 174.]

(No. 691—Decided February 1, 1967.)

*Messrs. Robison, Curphey & O'Connell* and *Mr. Richard A. Betts,* for appellant.

*Mr. Garver Oxley, Mr. Robert G. Payne, Messrs. Finn, Manahan & Pietrykowski* and *Mr. Marcus C. Downing,* for appellees.

GUERNSEY, J.   This is an appeal on questions of law by The Norfolk & Western Railway Company, substituted as party plaintiff for The New York, Chicago & St. Louis Railroad Company, from a judgment of the Common Pleas Court of Hancock County for the defendant, The Heffner Construction Company, hereinafter referred to as Heffner, entered pursuant to the sustaining of a motion for a directed verdict made by Heffner at the close of the plaintiff railroad's evidence.   The action in the trial court was for damages sustained by the plaintiff when its freight train was derailed in a collision with an empty dump truck driven by one Mason for the Trico Trucking, Inc., hereinafter referred to as Trico.   Heffner had a general contract with the state of Ohio for the construction of a part of Interstate Highway No. 75 in Hancock County and had entered into a subcontract with Trico for the hauling of gravel over the public roads from a gravel pit operated by Heffner to the highway project site, which at the times herein involved was a distance of about six miles.

The basic issue presented is whether, on the plaintiff's evidence, there is any proof of a relationship between Trico and Heffner, or of any responsibility of Heffner under its contract with the state of Ohio, which makes Heffner liable to the railroad for the damages thus sustained.   For the purposes of this

appeal it will be assumed, but not decided, that Mason was an employee of Trico, was actionably negligent, and that Trico was liable to the railroad for such negligence.

Plaintiff's assignment of error, that the trial court erred in directing a verdict in Heffner's favor, is itself divided into two principal contentions, the first of which is divided into subordinate contentions. We will consider these separately.

Plaintiff contends that the hauling subcontract between Heffner and Trico raised, in itself, a substantial issue of fact and jury question as to an agency relationship between Heffner and Trico. In pertinent part, with emphasis as added by the plaintiff, that contract reads as follows:

"Whereas, the Hauling Contractor desires to haul and transport such material, as shall be mined and removed by the Contractor, from said pit or pits of the Contractor to said Project * * *, and the Contractor desires to sublet to said Hauling Contractor the hauling and transportation of said material, *as directed by the Contractor* and in accordance with the terms and conditions hereinafter set forth;

"* * *.

"1. That the Hauling Contractor shall furnish and pay for all labor, services, equipment, trucks, fuel, supplies and materials necessary to undertake and perform, and shall do and perform, the hauling and transporting of approximately 104,000 tons of said I-22 material (gravel) from said pit or pits of the contractor * * ** to any and all points on or along said Project, *as directed by the Contractor*.

"2. That the Hauling Contractor shall commence hauling said material when *directed to do so by the Contractor* and shall prosecute said work diligently, and at all times shall employ a sufficient number of trucks to haul and transport, such quantities of said material as will enable the Contractor to proceed with its construction work in accordance with its working schedule and without delay or interruption. Said Hauling Contractor at all times shall have available and in satisfactory operating condition a sufficient number of trucks to haul a minimum of 2500 tons of said materials in or during an eight (8) hour period.

"3. That the basis of compensation to the Hauling Contractor shall be the number of tons of said material hauled and

delivered by the Hauling Contractor, *as directed by the Contractor.* * * *

"* * * *.

"6. That the Hauling Contractor shall obey and comply with all statutory and specification requirements relating to labor requirements and wage scales, shall pay all taxes assessed against or on account of its labor, and shall comply with all statutory and specification requirements as to labor reports, payroll taxes, and the like, including the submission of certified weekly payrolls to the Ohio Department of Highways. The Hauling Contractor shall also comply with and conform to the labor policy of the Contractor and with all state and federal labor laws."

The railroad contends that the emphasized portions of the contract raise a jury question on whether control of the mode and manner of doing the hauling was reserved to Heffner, and that this is particularly so as Heffner's contract with the state of Ohio included the following construction and material specification:

"Sec. G-8.06 * * * The Contractor shall not sublet, sell or assign any portion of this Contract or The Work provided for therein without the written consent of the Director *and such permission with reference to Subcontractors shall relieve the Contractor of no responsibility.* The Contractor will be held responsible for the satisfactory settlement by any and all Subcontractors, of all claims and obligations arising in connection with the execution of his portion of the Contract. Subcontractors must be qualified in accordance with Section 5525.06 of the Revised Code of Ohio." (Emphasis added.)

In initial answer, it must be observed that the railroad has in this instance raised an issue of the interpretation of contractual provisions of two contracts. It appears that the provisions quoted from each are clear and unambiguous. It is fundamental, under such circumstances, that the interpretation of same is for the court and not for the jury. Nevertheless, we will consider whether such provisions establish as a matter of law an agency relationship between Heffner and Trico.

The rules applicable to the legal relationships involved are fully set forth in the first three paragraphs of the syllabus of *Councell* v. *Douglas*, 163 Ohio St. 292:

"1. The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor.

"2. The rule of *respondeat superior* only arises out of the relationship of superior and subordinate and ceases when that relationship ceases to exist; and the reason of it is to be traced to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise, over the acts of his subordinates. (Paragraph four of the syllabus of *Clark* v. *Fry*, 8 Ohio St., 358, approved and followed.)

"3. Where one employs another to do certain work for him, the mere right reserved by the employer to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work so as to justify the conclusion that the relationship between the employer and the contractor is either that of principal and agent or master and servant. (Paragraph four of the syllabus in *Hughes* v. *Railway Co.*, 39 Ohio St., 461, approved and followed.)"

The phrase, "as directed by the Contractor," first quoted from the Heffner-Trico contract, is part of the preamble thereof and is necessarily limited and qualified by the balance of the clause, "and in accordance with the terms and conditions hereinafter set forth." Without considering such terms and conditions the phrase is meaningless. The same emphasized phrase in paragraph number one, in ordinary sense, modifies the phrase, "to any and all points on or along said Project," and is merely a reservation by Heffner of the right to designate the destination and use of the gravel. The phrase, "directed to do so by the Contractor," in paragraph number two merely modifies the phrase, "the Hauling Contractor shall commence hauling said material when," and is a reservation to Heffner of

the right to schedule the commencement of the work. The phrase, "as directed by the Contractor," in paragraph number four modifies the clause, "the basis of compensation to the Hauling Contractor shall be the number of tons of said material hauled and delivered by the Hauling Contractor," and precludes payment to Trico for any hauling except that done at a time and to a place designated by Heffner. Rights reserved to Heffner to determine the project termini of the hauling, the time of the commencement thereof, and the basis of payment of the contractor, and the imposition on the subcontractor of requirements as to wages and hours, labor provisions and policies, taxes, payrolls and reports, by paragraph six of the subcontract, have no relation to control of the mode and manner of doing the hauling and do not convert the relationship of independent contractor into one of agency. See, also, *Kelly* v. *Ford Motor Co.*, 104 Ohio App. 185, and *Gillum* v. *Industrial Commission*, 141 Ohio St. 373.

Nor does the emphasized provision of Section G-8.06 of the Construction and Material Specifications either purport to, or operate to, reserve to Heffner any control over the mode and manner in which Trico shall accomplish the hauling which it contracted to do. A contractual obligation which Heffner has to the state does not determine the character or terms of a contractual relationship between Heffner and one of its subcontractors, unless such obligation is set forth in the subcontract, either specifically, by reference, or by necessary implication.

Finally, the Supreme Court held in the fifth paragraph of the syllabus of *Hughes* v. *Railway Co.*, 39 Ohio St. 461, that:

"5. When an employer retains control over the mode and manner of doing a specified portion of the work only, and an injury results to a third person from the doing of some other portions of the work, the contractor alone is liable."

This holding was recently cited with approval by Chief Justice Taft in *Boch* v. *New York Life Ins. Co.*, 175 Ohio St. 458.

If it could be said that by its contract Heffner did retain control over the mode and manner of doing some portion of the work, the injury to the plaintiff resulted from a portion of the work over which Heffner retained no control, specifically from

the mode and manner in which Mason was driving his truck at the time and place of the collision, for which Mason and his employer, Trico, could alone be liable.

We conclude that plaintiff's contention as to liability by virtue of the provisions of the contracts is without merit.

Plaintiff's next contention is that Heffner controlled the "premises" on which Trico was employed, by controlling the work at the gravel pit and project site, by agreeing to prescribed haul routes with the State Department of Highways, and by occasionally stopping Trico drivers and rerouting them. Notwithstanding plaintiff's claims, the evidence tends merely to prove that between the gravel pit and the project site, where the principal part of the hauling was accomplished over public roads, the roads permitted to be used were designated by the state of Ohio alone; that, subject to limitations of location and distance to be traveled, Trico and its drivers had the option to determine which of the designated roads they would use; and that any "rerouting" of drivers done by Heffner was not in respect to the roads used but in respect only to the destination of a particular trip, i. e., with respect to the point where they would unload the gravel from their trucks. Thus Heffner did not control by this means the mode and manner in which Trico and its drivers hauled gravel from the pit to the project site, or the mode and manner in which they returned to the pit, but, by this means, tended to control only the ultimate result to be accomplished by the hauling. The railroad's contention as to control of the "premises" is therefore not supported by the evidence and is without merit.

The railroad next contends that Heffner "fixed the hours of work, which raised a substantial issue of fact." This court has been unable to discover any evidence showing that Heffner fixed the hours of work of Trico's drivers. It is undisputed that Heffner's employees normally worked from 7 a. m. to 5:30 p. m. at the gravel pit and from 7:30 a. m. to 6 p. m. at the project site; that the contract between Trico and Heffner provided that Trico "shall have available and in satisfactory operating condition a sufficient number of trucks to haul a minimum of 2,500 tons of said material in or during an eight (8) hour period"; and that Trico's drivers' time records for the period of time in question showed that Mason and other drivers

would usually work an eight hour day but would not work in excess of eight hours per day. There is no evidence, however, as to the exact time when Trico's drivers would commence work or quit work during the *eleven* hour period between 7 a. m. and 6 p. m., as to what factors would determine the period of time for which they, respectively, received wages, or as to when the eight hour period would occur within which Trico was required to provide sufficient trucks to haul a minimum of 2,500 tons. There is nothing in evidence to show that Trico was limited in its discretion as to determining the hours of work of each of its drivers. It could work them all or any part of a day, and start and end their respective day's work whenever it chose. The only reasonable inference from the evidence is that Trico had to have one driver ready to load at the gravel pit as soon as Heffner's drag line was ready to supply gravel and that this was the earliest point of time which Trico had to meet to supply Heffner's needs. There is also the inference that the latest point of time in any day which Trico had to meet to supply Heffner's needs was when one of its drivers dumped the last load of gravel for that day at the project site. Of course, the other drivers arrived at the drag line sometime later than the first driver and left the project site sometime earlier than the last driver. The railroad's contention as to control of hours establishing agency is not supported by the evidence and is without merit.

In its last contention as to control the railroad says that Heffner's interference with Trico's hauling work was so extensive as to constitute control. In this respect its only claim of any substance, other than those already disposed of, is that Heffner directed Trico's drivers in backing and maneuvering at the project site in order to dump their loads in the gravel spreader. The evdence shows that on occasion one or another of Heffner's employees would designate a turnaround spot on the project site and that on occasion, usually in connection with an unskilled driver, one or another of Heffner's employees would offer advice as to the backing of the truck into the spreader opening. Neither of these matters had anything to do with the details of the mode and manner in which Trico would haul gravel from the pit to the project site but related, instead, principally to the accomplishment by Heffner of the laying of

gravel at the project site, including the protection of work in progress, completed work and equipment, and the expedition of work in progress. They had only incidental relation to how Trico should unload the gravel, insufficient in law to constitute an "interference" or control by Heffner over the mode and manner of accomplishment of the work which Trico had contracted to do. The railroad's contention in this respect is also without merit.

Plaintiff railroad's second principal contention of error is that even were Trico an independent contractor Heffner is still liable to plaintiff because Section G-8.06 of the Construction and Material Specifications, hereinbefore quoted, which is part of Heffner's contract with the state, provides that the consent or permission of the Director of Highways to the subletting of a portion of the contract "shall relieve the Contractor of no *responsibility*"; and because "The Required Contract Provisions for Federal Aid Projects" prescribe that "the contractor shall provide all safeguards * * * and take any other needed actions * * * reasonably necessary to protect the life and health of employees on the job *and the safety of the public* and to protect property in connection with the performance of the work covered by the contract." The plaintiff claims that these provisions, particularly those which the plaintiff has emphasized, are sufficiently uncertain and ambiguous as to be beyond the province of the court to interpret but must be submitted to a jury to ascertain and determine the intent and meaning of the contracting parties in their use.

The former of these provisions, being part of the Construction and Material Specifications, is relieved of all ambiguity or uncertainty, as applied to plaintiff's claim, by the following provisions of Division I of the same document, providing:

"Sec. G-1 DEFINITIONS AND TERMS

"Whenever in these specifications, or in any documents or instruments in construction where these specifications govern, the following terms are used (or pronouns in place of them), the intent and meaning shall be interpreted as follows:

"* * *.

"G-1.16 Specifications. The Specifications are the directions, provisions and requirements contained herein as supplemented by such Special Provisions as may be necessary,

pertaining *to the method and manner of performing the work or to the quantities and qualities of materials to be furnished under the Contract.*" (Emphasis added.)

Thus, the term "responsibility" in subsection G-8.06 of the Construction and Material Specifications means responsibility as to "the method and manner of performing the work or to the quantities and qualities of materials to be furnished under the Contract," and has no relation to responsibility of the contractor for the torts of the subcontractor or its employees.

It is also the opinion of this court that the provisions of "Section VIII. SAFETY; ACCIDENT PREVENTION" of "Required Contract Provisions for Federal Aid Projects," are unambiguous and certain, have application only to safety and accident prevention on the work project, and have no application to a collision, occurring as here, off the work project. Moreover the Section requires the Contractor to take affimative action in providing safeguards, safety devices and protective equipment, and other actions reasonably necessary to protect the safety of the public. The contract would be breached only by *nonfeasance,* by failure to provide protection as determined to be reasonably necessary. These provisions do not purport to place upon the contractor legal responsibility or liability to third party beneficiaries for the misfeasance, or negligence, of either his own agents or employees or the employees of his subcontractors. Plaintiff's second principal contention of error is without merit.

Finding no error in any of the particulars assigned and argued by the plaintiff, we find that no jury question existed as to the liability of Heffner, that there was no evidence of probative value of a relationship, contractual or otherwise, existing between Heffner and Trico, or of a contractual relationship between Heffner and the state of Ohio, making Heffner liable to plaintiff for the assumed negligence of Mason in colliding with and derailing plaintiff's train, that the trial court properly directed a verdict in favor of Heffner, and that the judgment entered on that verdict must be affirmed.

*Judgment affirmed.*

YOUNGER, P. J., and MIDDLETON, J., concur.