Brush **WELLMAN**, Plaintiff,

v.

Carlos A. **MONTES**, et al., Defendants,

**Hartford Casualty Insurance Company**, Plaintiff,

v.

Carlos A. Montes, et al. Defendants.

**Nos. 3:01 CV 7383, 3:01 CV 7462.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 30, 2003.

Keith R. McMurdy, Roetzel & Andress, Cleveland, OH, Denise M. Hasbrook, Nancy Patrick Greeley, Roetzel & Andress, Toledo, OH, for Brush Wellman, Inc.

Patrick M. Roche, Davis & Young, Cleveland, OH, for Hartford.

John R. Kuhl, John R. Kuhl & Associates, L.P.A., Toledo, OH, Steven C. Hales, Bracy & Kuhl, Toledo, OH, William H. Bracy, City of Toledo, Department of Law, Toledo, OH, for Carlos A. Montes, Jorge Reyes.

Lynn L. Moore, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for J&B Tomato, Inc.

Jennifer N. West, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Lynn L. Moore, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Northwest Ohio Produce L.L.C.

John T. Murray, Sylvia Antalis Goldsmith, Murray & Murray, Sandusky, OH, Lorin J. Zaner, Zaner & Cimerman, Toledo, OH, Scott E. Spencer, Toledo, OH, for Jessie Wilke, Donna Ries, Robert Ries.

## ORDER

CARR, District Judge.

This is a subrogation action brought by plaintiff Brush Wellman, Inc. ("Brush") to recover monies paid under its self-insured employee health and welfare benefits program. This case has been consolidated with another subrogation action, brought by plaintiff Hartford Casualty Insurance Company ("Hartford"), to recover monies paid pursuant to its uninsured/underinsured motorist policy with Brush. This court has federal question jurisdiction over the Brush Wellman case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). This court has jurisdiction over the Hartford case pursuant to 28 U.S.C. § 1332. Pending are plaintiff Brush's motion for partial summary judgment, plaintiff Hartford's motion for partial summary judgment, and defendant Northwest Ohio Produce's ("Northwest") cross motion for summary judgment. For the following reasons, Northwest's motion shall be granted and Brush's and Hartford's motions shall be denied.

## BACKGROUND

On August 31, 1999, on Portage River South Road in Ottawa County, Ohio, a tractor-trailer owned by defendant Jorge Reyes ("Reyes"), being driven by defendant Carlos Montes ("Montes"), struck an automobile being driven by Donna L Ries. (Doc. 1, ¶ 11; Doc. 49, at 5.) It is undisputed that Montes was at fault for the accident. Donna L. Ries ("Ries") and her passenger, Jesse Wilke ("Wilke"), suffered injuries as a result of the accident, and sought benefits from plaintiff Brush. Brush paid for the health care costs of Ries and Wilke, and now brings a subrogation claim against defendant Northwest, the putative employer of Reyes and Montes.

Ries and Wilke also presented a claim for uninsured/underinsured motorist benefits to plaintiff Hartford based on the so-called "Scott–Pontzer" doctrine, set forth in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999) and *Ezawa v. Yasuda Fire & Marine Ins. Co. of America*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999). Hartford settled the claim, and brought its own subrogation action to recover the monies paid in the settlement.

Defendants Reyes and Montes are migrant laborers who, at the request of Reyes' brother and crew chief for Northwest, Rogelio Reyes, came to Ohio to harvest and haul tomatoes for Northwest. (Doc. 44, at 18, ll.3–8.) Northwest packed and sold tomatoes as part of a farming cooperative consisting of four tomato farmers. (Doc. 43, at 16, ll. 15–17.) Because it is not possible to tell whether tomatoes are ripe for harvest until two to three days beforehand, Northwest did not know which fields to pick until they were so informed

by the farmers shortly before the picking began. (Doc. 43, at 29–30.) None of the farmers within the cooperative were employees of Northwest. (Doc. 43, at 31, ll. 12–15.) At the time of the accident, Montes was hauling empty crates, a task that was part of Montes' daily routine. (Doc. 19, at 9.) Reyes and Montes performed these hauling services to entities outside the four-farmer cooperative. (Doc. 43, at 18, ll. 7–8.) Picking and hauling tomatoes is seasonal work.

Rogelio Reyes paid Jorge Reyes in cash each week at a piece rate of $.75/box. (Doc. 43, at 10, ll. 19–20.) Northwest did not put Reyes or Montes on its payroll, nor did it issue them W–2 forms. (Doc. 42, at 6, ll. 4–15.) Larry Leow ("Leow"), accountant for Northwest, believes that both Reyes and Montes were issued 1099 forms. (Doc. 42, at 6, ll. 16–17.) On a daily basis, Jorge Reyes went to the packing house where Rogelio Reyes directed him which fields to harvest. (Doc. 43, at 30, ll. 5–14.) Northwest did not control which travel routes Reyes and Montes took, nor did it give any instructions to Reyes about the operation of his truck. (Doc. 44, at 31.)

Reyes and Montes loaded and packed boxes on the truck, and Montes hauled them to the plant. (Doc. 44, at 14–15.) Reyes and Montes did not have fixed hours of work; they could stop working at their whim or when the loads stopped coming. (Doc. 44, at 29–30.) Either Rogelio Reyes or another employee of Northwest provided some instruction to Reyes while Reyes and Montes were in the tomato fields. (Doc. 49, at 6; Doc. 43, at 30, ll. 18–23.) Reyes instructed Montes in the fields and with respect to the operation of the truck. (Doc. 49, at 5.) There were no agreements or contracts involving Reyes, Montes, and Northwest. (Doc. 43, at 10, ll. 15–17.)

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It in insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment

shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

Plaintiffs Brush and Hartford allege that defendant Northwest is liable for the negligence of defendants Reyes and Montes under the doctrine of *respondeat superior.* Northwest counters it is not vicariously liable for the negligence of Reyes and Montes because they were independent contractors. Hartford and Brush claim that Reyes and Montes were employees of Northwest, not independent contractors. I agree with Northwest that Reyes and Montes were independent contractors. Therefore, Northwest cannot be held vicariously liable for any negligence committed by either Reyes or Montes.

### I. *Brush Wellman v. Carlos Montes*

 Under the doctrine of *respondeat superior,* an employer is only liable for the acts of its employees done within the scope of their employment. *Hamilton v. Carell,* 243 F.3d 992, 1001 (6th Cir.2001). The sole issue in this case is whether Montes and Reyes were employees of, or independent contractors for, Northwest.

Plaintiff Brush alleges that the Employee Retirement and Income Security Act of 1974 ("ERISA") defines, supersedes, and preempts all other laws related to an employee benefit plan pursuant to 29 U.S.C. § 1144. (Doc. 1, ¶ 8; Doc. 41, at 4.) However, ERISA's nominal definition of "employee" is circular and explains nothing, and there is no provision that either gives guidance to the term's meaning or suggests that construing it to incorporate traditional agency law principles would thwart congressional design or lead to ab-

surd results. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). For this reason, the Supreme Court has "adopt[ed] a common law test for determining who qualifies as an 'employee' under ERISA." *Id.* This is a general common law test of agency, rather than the law of any particular state. *Id.* at 324, 112 S.Ct. 1344 (citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 740, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). I therefore must look to the general common law of agency to determine whether Reyes and Montes were Northwest's employees or independent contractors.

The Supreme Court has set forth the following factors to consider in determining the hiring party's right to control the manner and means by which the putative employee accomplishes his work:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Reid,* 490 U.S. at 751, 109 S.Ct. 2166.

 Plaintiff Brush alleges that defendant Northwest retained absolute control over defendants Reyes and Montes, and that Reyes and Montes "did not retain any discretion in performing their work within this system." (Doc. 41, at 11.) I disagree. First, not only is this unsupported by the record, "but the extent of control the hiring party exercises over the

details of the [work] is not dispositive." *Reid*, 490 U.S. at 752, 109 S.Ct. 2166. In addition, the fact that Northwest neither withheld payroll taxes, nor provided employment benefits, favors a finding of independent contractor status. *See Hi–Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1097 (6th Cir.1995).

The Supreme Court's decision in *Reid* involved a dispute between a non-profit organization and an artist over the copyright ownership of a sculpture. The Court held that the artist was not an employee, but instead working as an independent contractor for purposes of the "work for hire" provisions of the Copyright Act of 1976. *Reid*, 490 U.S. at 752–53, 109 S.Ct. 2166. In reaching its holding in *Reid*, the Court found several factors that "[weighed] heavily against finding an employment relationship." *Id.* at 752, 109 S.Ct. 2166. Among them:

> Reid is a sculptor, a skilled occupation.... Reid supplied his own tools. Reid was retained for less than two months, a relatively short period of time.... During and after this time, CCNV had no right to assign additional projects to Reid. Apart from the deadline for completing the sculpture, Reid had absolute freedom to decide when and how long to work. CCNV paid Reid $15,000, a sum dependent on "completion of a specific job, a method by which independent contractors are often compensated." Reid had total discretion in hiring and paying assistants.... Finally, CCNV did not pay payroll or Social Security taxes, provide any employee benefits, or contribute to unemployment insurance or workers' compensation funds.

*Id.* at 751–52, 109 S.Ct. 2166 (quoting *Holt v. Winpisinger*, 811 F.2d 1532, 1540 (D.C.Cir.1987)).

The Sixth Circuit has declined to recognize an employment relationship in cases with factors similar to those in the present action. In *Ware v. United States*, 67 F.3d 574 (6th Cir.1995), the court held that Ware, an insurance agent almost exclusively limited to selling only one company's policies, was an independent contractor. Though recognizing that "general agents like Ware are an integral part of [the insurance company's business]," the court found five factors to "strongly favor independent contractor status."

> First, Ware was paid by commission rather than straight salary or according to the number of hours worked. He paid most of his business and travel expenses, furnished almost all of his own tools and materials, and he made significant investment in the enterprise.... Finally, Ware stood to profit or lose money as a result of his services, the former being particularly important.

*Id.* at 579–80; *accord Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 251 (6th Cir.1989) (holding that because plaintiff hired his own employees and exercised managerial skill, owned his own office, was paid on commission, required to obtain and maintain a license to sell insurance, and defendant made no deductions for Social Security taxes, plaintiff was an independent contractor, not an employee).

Though no one factor is dispositive, the evidence in this case demonstrates that defendants Reyes and Montes acted as independent contractors. First, while the skill required may not be great, operating tractor-trailers such as the truck Montes was driving at the time of the accident certainly requires some degree of skill. As for the location of the work, nearly all of it took place in the tomato fields owned by farmers who were not employed by Northwest, or in the hauling truck owned by defendant Reyes. While the relationship that Reyes and Montes had with Northwest spanned about three years, this

work is necessary seasonal, thus this relationship lasted only during the harvest season. There is no indication that Northwest had the right to assign additional tasks to either Reyes or Montes. Both Reyes and Montes were paid cash, based on the number of packed crates delivered, rather than by salary or hours worked. Moreover, Reyes, not Northwest, solicited Montes for assistance. Finally, Northwest did not afford any type of employment benefits to Reyes or Montes, nor did Northwest issue the two workers any W–2 forms for tax purposes. The mere facts that Northwest was in the business of selling tomatoes, and hauling them is an integral part of this business, are not sufficient to support a holding that Reyes and Montes were employees of Northwest.

Because defendants Reyes and Montes were independent contractors, Northwest cannot be held vicariously liable under the doctrine of *respondeat superior*. Northwest's motion for summary judgment therefore is granted.

## II. *Hartford Casualty Insurance Co. v. Montes,* et al.

Plaintiff Hartford alleges that defendant Northwest is liable for the negligence of defendants' Reyes and Montes under the doctrine of *respondeat superior*. Specifically, Hartford alleges that Reyes and Montes were employees of Northwest, not independent contractors. Again, I disagree.

■ Because this court has diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332, I must look to Ohio law to determine whether defendants Reyes and Montes were employees or independent contractors. *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir.2003) (holding that a federal court sitting in diversity applies substantive law of the forum state). Under Ohio law, the negligence of an independent contractor is not attributable to a hiring party who retains no right of control over the work performed by the independent contractor. *Councell v. Douglas,* 163 Ohio St. 292, 295, 126 N.E.2d 597 (1955). "The fundamental rule generally recognized is that the doctrine of *respondeat superior* is applicable to the relation of master and servant or of principal and agent, but not to that of employer and independent contractor." *Id.; see also Laderer v. St. Rita's Med. Ctr.,* 122 Ohio App.3d 587, 594, 702 N.E.2d 476 (1997) ("Though an employer or principal is generally vicariously liable for the torts of his employee or agent under *respondeat superior,* the negligence of an independent contractor is not attributable to a hiring party who retains no right of control over the mode and manner or the work performed by the hired person.").

■ In Ohio, an independent contractor relationship exists when the contractor controls the manner and means of the work, and the contractor is responsible for the end result. *Conway v. Calbert,* 119 Ohio App.3d 288, 291, 695 N.E.2d 271 (1997). Whether such control has been exercised is determined on a case by case basis, considering:

(1) the control of the details and quality of work;

(2) the hours that are worked;

(3) the selection of the material and quality of work;

(4) the personnel used in performing the work;

(5) the length of the work;

(6) the nature of the business commissioning the work;

(7) the method of payment; and

(8) the attendant agreement or contracts.

*Id.* at 291–92, 695 N.E.2d 271 (citing *Bostic v. Connor,* 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988)).

■ If there is no dispute about the work performed, whether the work creates an independent contractor relationship is a question of law. *Id.* "However, the issue becomes a jury question where the claimant offers he was an employee rather than an independent contractor." *Bostic,* 37 Ohio St.3d at 146, 524 N.E.2d 881.

The Ohio Court of Appeals has addressed the issue of whether a general contractor can be held vicariously liable for the negligence of its subcontractor where the subcontractor was performing hauling services for the contractor. *New York, Chicago & St. Louis Rd. Co. v. Heffner Constr. Co.,* 9 Ohio App.2d 174, 175, 223 N.E.2d 649 (1967). In *Heffner,* the plaintiff railroad company sought to hold defendant Heffner vicariously liable for the negligence of Mason, who was driving an empty dump truck for Trico Trucking, Inc. *Id.* Heffner contracted with Trico to load and haul gravel from Heffner's gravel pit. *Id.* The plaintiff asserted that because Heffner exercised control over Trico at the gravel pit where the gravel was loaded, Heffner therefore controlled the mode and manner of the work performed, rendering Trico an employee of Heffner. *Id.* at 180, 223 N.E.2d 649. Rejecting this contention, the court held that because the injury to the plaintiff resulted form a portion of the work over which Heffner retained no control, specifically the mode and manner in which Mason was driving his truck at the time of the collision, Heffner could not be held vicariously liable. *Id.*

■ The decision in *Heffner* is closely analogous to the instant case. First, any control that Northwest exercised over Reyes or Montes related to the work of harvesting, rather than the job of hauling tomatoes or, as at the time of the accident, transporting empty crates in preparation for the following day's work. Contrary to Hartford's assertions, Northwest did not control whether Reyes and Montes worked at all, how hard they worked, or how much they earned. Northwest gave no instructions as to travel routes to get to where Reyes and Montes would work, or how to operate the truck, which Reyes, rather than Northwest, owned. Northwest did not provide insurance for the vehicle, or even, apparently, require proof of insurance from Reyes.

Plaintiff Hartford asserts that "Northwest had the complete and total right to control Montes' and Reyes' job performance" and that Northwest "gave specific instructions for hauling and transporting the tomatoes. Montes and Reyes had no individual discretion." (Doc. 19, at 4.) I agree with defendant Northwest that Hartford has failed to proffer any evidence in the record to support these conclusions. Northwest certainly controlled where Reyes and Montes worked by assigning which field they would work in, and may have given some instruction to them while they were in the fields. However, because it is not possible to tell whether the tomatoes are ripe for harvest until two to three days before they are ready, directing Reyes daily as to which fields to go to is simply part of the tomato farming business. Farmers within the cooperative told Northwest which fields were ready a couple days beforehand and Northwest in turn told Reyes, who in turn told his assistant, Montes. This is necessarily a day-to-day process, requiring Reyes to learn from Northwest which fields the farmers wanted harvested. Hartford's attempt to equate this circumstance as having "complete and total control" over Reyes and Montes is unpersuasive. Reyes and Montes were not in the tomato farming business, but rather the tomato harvesting and hauling business.

While there may have been some control over Reyes, and less over Montes, who was

hired directly by Reyes and subject to his control, I find that the undisputed evidence shows that each retained discretion over most of what they did and when they did it. Thus they were independent contractors, and Northwest cannot be held liable for their actions.

### III. Conclusion

In light of the forgoing, it is

**ORDERED THAT:**

1. The motions for summary judgment of plaintiffs Brush and Hartford be, and they hereby are, denied; and

2. Defendant Northwest's motion for summary judgment be, and it hereby is, granted.

**So ordered.**